**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**LEON CHARLES LAURAY,**

    Plaintiff,

v.           **CASE NO. 3:05-CV-00274-JHM-MMH**

**CHAD ABELL, an individual,
HAILEY CO. INC., a Georgia Corporation,
SILVER INK, INC., a Georgia Corporation,**

    Defendants.
_____/

**O R D E R**

Before the Court is Defendants' Motion to Dismiss Verified Second Amended Complaint or, Alternatively, Motion to Strike and Supporting Memorandum of Law (Dkt. 39), to which Plaintiff filed a Memorandum in Opposition (Dkt. 40).

**I.  Procedural Posture**

The Plaintiff's Complaint (Dkt. 2) was filed on December 21, 2004 in the Fourth Judicial Circuit, Circuit Court, in and for Duval County, Florida. The Complaint was served on the Defendants[1] on various dates in late March, 2005. On March 29, 2005 Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

**II. The Plaintiff's Allegations**

On June 28, 2005 Plaintiff's Verified Second Amended Complaint ("Amended Complaint") (Dkt. 31) was filed. Plaintiff states three counts against Defendants, including fraudulent or negligent misrepresentation (Count I), a violation of the Florida Whistleblower Act (Count II) and a violation of the

---

[1] The Complaint (Dkt. 2) also listed Patsy Abell and Robert Weeks as Defendants. However, both Defendants were removed when Plaintiff filed his Verified Second Amended Complaint (Dkt. 31).

Civil Remedies for Criminal Practices Act ("CRCPA") (Count III). Plaintiff is seeking lost unemployment benefits and social security benefits, interest, costs, attorney's fees as well as treble damages for the alleged violation of the CRCPA.

The Amended Complaint (Dkt. 31) provides that from 1995 to 1996, Plaintiff was employed as a route driver by Randy's Delivery Service, a contractor for Airborne Express, Inc., ("Airborne") at Airborne's Jacksonville depot (Dkt. 31, ¶ 7). Plaintiff alleges at all times while employed by Randy's, Plaintiff was classified as an employee and received weekly paychecks with the proper payroll tax withholdings. Id. at ¶ 8. Plaintiff also alleges he was required to wear an Airborne uniform and to drive a company-owned van containing Airborne's logo. On or about October 1, 2002, DHL Air Express, S.A. ("DHL") acquired Airborne and contracted with Defendant Chad Abell ("Abell"), through a company owned by Defendant Abell, to take over operations at the Jacksonville depot. Id. at ¶ 10. Plaintiff contends that during the first several pay periods after Defendant Abell and Defendant Silver Ink Inc. ("Silver Ink") took over, Plaintiff was paid in cash. Id. at ¶ 13. Plaintiff specifically contends that on or about October 17, 2002, Plaintiff was issued a handwritten paycheck from Defendant Abell's company, Defendant Silver Ink. The paycheck did not have an attached stub and apparently no taxes were withheld (Dkt. 31, Exhibit A). Plaintiff asserts this is how he was paid for the duration of his employment with Defendant Abell and his companies.

On or about October 22, 2002, Plaintiff provides he wrote a letter to Defendant Abell requesting clarification regarding his job description, pay rate, withholdings and his status under Workers Compensation Insurance and Unemployment Insurance. (Dkt. 31, ¶ 15); See (Dkt. 31, Exhibit B). Plaintiff notes that both previous and subsequent to the October 22nd letter, he verbally inquired about these issues. Plaintiff alleges that Defendant Abell responded to the letter by stating a payroll company would be hired

and taxes would be withheld as soon as he registered a company to do business in Florida.[2] Plaintiff contends Defendant Abell also responded to his inquiry by writing "Hartsford" on Plaintiff's October 22nd letter. Plaintiff also alleges that up until this point, neither he nor fellow co-workers had been asked to fill out W-4 tax forms. Additionally, that on or about December 2, 2002, Defendant Silver Ink announced they would not be reporting employees' income from October 2002 through December 2002. Plaintiff allegedly objected as he wanted all of his income reported, the appropriate withholdings done and the employer contributions made (Dkt. 31, ¶ 17). Nevertheless, Plaintiff alleges he was not issued any tax documents for work performed between October and December 2002. Plaintiff further alleges that on two occasions in March and June 2003, he requested W-4 tax forms and was told by Defendant Silver Ink that taxes would be withheld.

On or about January 1, 2004, Plaintiff states he was issued a DHL uniform and a van with the DHL colors and logo. Defendant Silver Ink, on or about January 31, 2004, allegedly issued a 1099 tax form and informed Plaintiff he would be considered an independent contractor. Plaintiff asserts this is the first time he or any co-worker were told they were independent contractors. Plaintiff alleges his substantive duties had not been changed since beginning work with Randy's in 1995.

Plaintiff contends that on or about March 9, 2004, his friend Raymond Rose wrote a letter to the Chief Executive Officer of DHL protesting the classification of delivery drivers as independent contractors. The letter also addressed the practice of paying employees in cash and with handwritten checks that lacked payroll deductions. According to Plaintiff, Defendant Abell was copied on the letter. (Dkt. 31, Exhibit C).

Additionally, Plaintiff argues that Defendant Silver Ink was never registered to do business in Florida. Rather, Plaintiff alleges that on or about April 5, 2004, Defendant Abell registered Defendant

---

[2] Both Defendant Silver Ink and Defendant Hailey Co., Inc., ("Hailey") are Georgia corporations.

Hailey Co. Inc., ("Hailey") in Florida to conduct business which had previously been performed by the non- registered Defendant Silver Ink. On or about April 15, 2004, Plaintiff sent a Form SS-8 to the Internal Revenue Service ("IRS") inquiring about his employment status for federal tax purposes for services performed in 2002 through 2004 (Dkt. 31, ¶ 24). In approximately May 2004, the IRS sought information from Defendants Abell and Silver Ink, although neither provided any response. Plaintiff alleges this put Defendants on notice of his inquires to the IRS.

Plaintiff states on or about May 12, 2004, he checked into St. Vincent's Hospital for issues involving his heart valves. While he had notified his employer of the need to miss work, Plaintiff ended up being discharged from the hospital on the following day, May 13, 2004. Plaintiff alleges he returned to work Monday, May 17, 2004 and that he was terminated on May 18, 2004. According to Plaintiff, he was told his "services were no longer needed." Id. at ¶ 27.  Shortly thereafter, Plaintiff applied for unemployment compensation and was denied. Plaintiff filed an appeal and on June 2, 2004, the Florida Department of Revenue concluded Plaintiff was an employee while performing services as a "Driver." (Dkt. 31, Exhibit D). Therefore, Plaintiff received unemployment compensation from June through October 2004.

Plaintiff alleges that in August 2004, Defendant Abell met with the route drivers with whom Plaintiff had previously worked and informed them that "[w]e are going to make you legal." Id. at ¶ 30. Moreover, that Defendant Abell suggested the drivers were, and had been, employees of Defendant Silver Ink through its affiliated company Defendant Hailey. Id.  In September 2004, Defendants, through Defendant Hailey, allegedly began withholding employment taxes and issuing payroll checks. Id.; See (Dkt. 31, Exhibit E).

Also in September 2004, Plaintiff states he applied to the Social Security Administration for

disability benefits involving his heart. While Plaintiff was approved and began receiving benefits in January 2005, his benefits were allegedly diminished due to the fact he received no credit for time worked for Defendants between October 1, 2002 and May 18, 2004. Lastly, Plaintiff notes the IRS found, on March 30, 2005, that he was an employee for Defendant Silver Ink for services performed in 2002 through 2004 (Dkt. 31, Exhibit F).

Defendants now move to dismiss the Verified Second Amended Complaint, or, Alternatively, move to Strike (Dkt. 39). Defendants contend the Amended Complaint, in its entirety, fails to state a claim upon which relief can be granted, Federal Rules of Civil Procedure 12(b)(6), and seek to dismiss with prejudice all claims against Defendant Abell in his individual capacity and against Defendant Hailey. Alternatively, Defendants move to strike material from the Amended Complaint.

**III.   Standard of Review**

To prevail on a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Defendant must show beyond all doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Luckey v. Harris, 860 F.2d 1012, 1016 (11th Cir. 1988).  At the motion to dismiss stage, this Court is required to accept all of the Plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to the Plaintiff.  See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274, n.1 (11th Cir. 1999); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

**IV.   Discussion**

Defendants assert the claims of fraudulent or negligent misrepresentation (Count I) are problematic because a single count contains two separate and distinct causes of action. Defendants further assert

assuming such pleading to be proper, both claims fail to plead the requisite elements and should therefore be dismissed. Specifically, for fraudulent misrepresentation, Defendants contend the following elements must be plead: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985)(internal citation omitted). Defendants argue Plaintiff has failed to allege the third element and that this claim should therefore be dismissed.

Similarly, Defendants contend Plaintiff has failed to plead the third element required in a claim for negligent misrepresentation. The necessary elements are: (1) a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (2d DCA 1993)(internal citations omitted). As a result, Defendants argue the claim for negligent representation should be dismissed.

Plaintiff responds that pursuant to Rule 8(a)(2), Federal Rules of Civil Procedure, a pleading need only set forth "a short plain statement of the claim showing that the pleader is entitled to relief." Plaintiff argues Defendants are improperly attempting to require the Court to apply Florida's higher fact pleading standards. See Caster v. Hennessey, 781 F. 2d 1569, 1570 (11th Cir. 1986). Plaintiff also argues the allegations in Count I provide Defendants with sufficient notice that the claim is for fraudulent or negligent misrepresentation. However, Plaintiff does agree, if the Court deems it necessary, to interlineate the "intent to induce reliance" element into specific allegations of Count I of the Amended Complaint, or to file a

comparable amendment to the Amended Complaint.

The Court does in fact find that it is necessary for Plaintiff to interlineate the "intent to induce reliance" element into the causes of action for fraudulent or negligent misrepresentation. The Court also finds that Count I, in alleging two distinct causes of action, should be separated into two separate counts. The Court will therefore give Plaintiff leave to amend the Complaint to comply with these findings.

As to the claim that Defendants violated the Florida Whistleblower Act (Count II), Defendants assert Plaintiff failed to state a cause of action under this Act. Defendants note the Florida Whistleblower Act, in pertinent part, provides that an employer may not take retaliatory personnel action against an employee because the employee has:

> Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

Florida Statute § 448.102(1). See Florida Statute § 448.103(1)(c)(precludes employee from recovering under this subsection if the employee failed to notify the employer as is required under Florida Statute § 448.102(1)). Defendants argue Plaintiff's failure to state a cause of action under the Whistleblower Act is twofold. First, that Plaintiff has not and cannot allege he provided notice to his employer as is required in Florida Statute §§ 448.102(1) and 448.103(1)(c). Defendants also contend Plaintiff has not and cannot allege that any "activity, policy, or practice" of Defendants violated a "law, rule or regulation" to which Plaintiff objected (Dkt. 39 at 7). Consequently, Defendants argue Plaintiff has failed to state a cause of action and that Count II should be dismissed.

Plaintiff asserts he did in fact provide notice in that he wrote and hand delivered a letter on October 22, 2002, to Defendant Abell requesting a full accounting of all payments, including withhold amounts,

7

dates of payment, rate of pay and description of services performed (Dkt. 31, Exhibit B). Plaintiff argues this satisfies the written notice requirement. Moreover, as to Defendants contention Plaintiff failed to allege any "activity, policy, or practice" of Defendants that violated a "law, rule or regulation," Plaintiff asserts he alleged that Defendants failed to withhold payroll taxes and report Plaintiff's income to the Internal Revenue Service ("IRS") in accordance with the applicable provisions of the IRS Code (Dkt. 40 at 5). See (Dkt. 31, Exhibits D and F). Plaintiff, having satisfied the requisite requirements, argues he has stated a cause of action under the Whistleblower Act.

The Court agrees with the Plaintiff. The Plaintiff did provide written notice when he delivered his letter to Defendant Abell on October 22, 2002 (Dkt. 31, Exhibit B). The Court also finds that Plaintiff has alleged that Defendants had a practice which was, at a minimum, violative of the IRS Code. Id. at Exhibit D and F. Consequently, Count II will survive Defendants' Motion to Dismiss (Dkt. 39).

For Plaintiff's claim that Defendants violated the Civil Remedies for Criminal Practices Act ("CRCPA") (Count III), Florida Statute § 772.103, Defendants argue Plaintiff has failed to plead all the necessary elements. Indeed, Defendants also provide that Plaintiff did not specify which subsection of Florida Statute § 772.103 he is seeking relief through, although Defendants assume it is subsection (1). Florida Statute § 772.103(1) provides that it is unlawful for any person:

> Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity. . . whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

Florida Statute § 772.102(4) defines "pattern of criminal activity" as:

> [E]ngaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity.

Defendants assert that in interpreting these sections, courts have examined case law involving the federal RICO statute. Jones v. Childers, 18 F. 3d 899, 910 (11th Cir. 1994). Defendants further assert that in satisfying the test of "pattern of criminal activity," two predicate acts may not be sufficient. Instead, in order to produce a pattern, there has to be "continuity plus relationship." Id. (internal citations omitted). Because Plaintiff merely alleges Defendants Silver Ink and Hailey were not registered to do business in Florida, in violation of Chapter 607, Florida Statutes, Defendants argue Plaintiff has failed to plead two predicate acts "whatsoever, let alone, two predicate acts that would survive the test of a 'continuity plus relationship.'"[3] Defendants therefore contend Count III must be dismissed.

Plaintiff responds that in order for Count III to survive a motion to dismiss, Plaintiff "must allege facts sufficient to support at least two of the predicate acts." Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270, 1274 (M.D. Fla. 2002)(internal citations omitted). Plaintiff contends he has met this requirement. Specifically, Plaintiff argues the Amended Complaint alleges Defendants were not registered to do business in Florida in violation of Florida Statute § 607.1501 and that this constitutes a fraud on the Secretary of State pursuant to Florida Statute § 817.155. Plaintiff provides "each and every time Defendants paid Plaintiff and other employees while not being registered to do business in Florida, Defendants committed fraud on the Secretary of State by knowingly evading tax and reporting obligations to the State." (Dkt. 40 at 6). Consequently, these acts of fraud represent at least two predicate acts that are related to criminal activity.

Additionally, Plaintiff acknowledges he must also demonstrate the predicate acts "'are related, and that they amount to or pose a threat of criminal activity.'" Jones, 18 F.3d 899, 911 (11th Cir. 1994)(quoting

---

[3] Defendants state Plaintiff failed to specify which section of Chapter 607, Florida Statutes, Defendants allegedly violated.

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)). For instance, "[a] showing that the predicate acts are 'part of an ongoing entity's regular way of doing business' would. . .satisfy the 'continuity' requirement either in the cases where the entity is a traditional criminal enterprise or with respect to an ongoing legitimate business." Id. at 911 (internal citations omitted). Plaintiff argues the Amended Complaint demonstrates Defendants regularly conducted business in Florida for over a year without being registered, and that this may have continued had Plaintiff not disclosed it to the IRS and the State of Florida. Plaintiff therefore argues Defendants' Motion to dismiss Count III must be denied.

This Court agrees. The allegations that Defendants regularly conducted business in Florida, despite not being registered, and that each time Defendants paid Plaintiff and other employees they knowingly evaded tax obligations, sufficiently states a claim for purposes of surviving a motion to dismiss.

Defendants also argue that the Amended Complaint impermissibly seeks to hold Defendant Abell, an individual and an officer of the respective corporate Defendants, liable. Defendants contend Plaintiff cannot pierce the corporate veil and that any claims against Defendant Abell should be dismissed with prejudice. Moreover, that the Amended Complaint should be dismissed in its entirety as to Defendant Hailey as the allegations in the Amended Complaint are all directed toward Defendant Silver Ink. Defendants therefore seek dismissal as to any claims against Defendant Hailey.

Plaintiff asserts Defendant Abell is named individually because he himself represented to Plaintiff that a payroll company would be hired and taxes would be withheld. Plaintiff contends he is not attempting to pierce the corporate veil as it is well settled that "individual officers and agents of a corporation may be held liable for their tortious acts even if such acts are committed within the scope of their employment." First Financial USA, Inc. v. Steinger, 760 So. 2d 996, 997 (Fla. 5th DCA 2000). Furthermore, because of Defendant Abell's misrepresentations, he is individually liable and is a properly named Defendant. Plaintiff

10

also argues that Defendnat Hailey is a properly named Defendant. Indeed, Plaintiff contends it was deliberately made unclear to him whether he was an employee of Defendant Silver Ink or Defendant Hailey, or both. Plaintiff also argues he sufficiently alleged that Defendant Hailey was registered to conduct the business in Florida that was previously performed by Defendant Silver Ink. Moreover, that drivers like Plaintiff had been employees of Defendant Silver Ink through Defendant Hailey, an affiliated company. As a result, Plaintiff contends Defendant Hailey is also a properly named Defendant.

This Court agrees. Taking all of the allegations within the four corners of the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that at this juncture, Defendants Abell and Hailey are properly named as Defendants and Defendants' Motion to Dismiss is denied.

Alternatively, Defendant moves to strike portions of the Amended Complaint pursuant to Rule 12(f), Federal Rules of Civil Procedure. Specifically, Defendants seek to strike Exhibit C as well as paragraphs ¶¶ 18, 26 and 30 of the Amended Complaint arguing they are immaterial, impertinent and scandalous. On the other hand, Plaintiff argues Defendants' Motion is without merit. Moreover, Plaintiff notes that "[m]otions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored by courts." <u>Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.</u>, 941 F. Supp. 1182, 1184 (M.D. Fla. 1996).

This Court agrees with the Plaintiff. The Court finds that neither Exhibit C nor paragraphs ¶¶ 18, 26 and 30 should be striken.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss Verified Second Amended Complaint or, Alternatively, Motion to Strike and Supporting Memorandum of Law (Dkt. 39) is **DENIED.**

2. Plaintiff has up to and including **September 8, 2005** for leave to file an Amended Complaint.

BY ORDER OF THE COURT, at Jacksonville, Florida, this __25__ day of August, 2005.

Copies to:
Counsel of Record

_____
JOHN H. MOORE II
United States District Judge